IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TAMARA VILLANUEVA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:11CV3185 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SCOTTSBLUFF, and | ) | **MEMORANDUM** |
| ALEX MORENO, Individually and | ) | **AND ORDER** |
| in his official capacity as Chief of | ) | |
| Police, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Tamara Villanueva brings this 42 U.S.C. § 1983 action against the City of Scottsbluff and its chief of police, Alex Moreno, in his individual and official capacities for alleged violations of her rights to equal protection and substantive due process[1], as well as for negligent infliction of emotional distress under Nebraska law. (Filing 20, Second Amended Complaint ¶ 1.)  Villanueva's claims stem from the defendants' alleged failure to respond to her repeated reports of assault and harassment by her ex-husband, as well as harassment and serious threats directed at Plaintiff and her family that were supposedly orchestrated by Moreno.  Pending before the court are the defendants' motion to dismiss (filing 21) pursuant to Fed. R. Civ. P. 12(b)(6) and motion to strike (filing 23) Plaintiff's claims for punitive damages.

_____

[1]In a prior memorandum and order (filing 19) on Defendants' motion to dismiss Plaintiff's amended complaint, I stated that Plaintiff did not assert a substantive due process claim.  However, Plaintiff's second amended complaint (filing 20) adds a third cause of action which I construe to be a substantive due process claim.  (Filing 20 ¶¶ 54-63.)

## A.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations & quotations omitted).  This "plausibility standard" is not one of probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal citations & quotations omitted).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (internal citation omitted; quoting Fed. R. Civ. P. 8(a)(2)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

## B.  Plaintiff's Allegations

Plaintiff Villanueva's second amended complaint (filing 20) alleges that she lives in Scottsbluff, Nebraska, where defendant Alex Moreno is the chief of police. In August 2010, Villanueva met with Moreno to discuss her resignation as the "contact person" for her neighborhood-watch group.  In that capacity, Villanueva had made frequent calls to the police department, and the police department had acted upon Villanueva's calls.  During her meeting with Moreno, Villanueva disclosed that

she was the victim of domestic assault by her now ex-husband, but she did not file a formal report.  (Filing 20 ¶¶ 4-10.)

Three days after Villanueva's and Moreno's meeting, Villanueva's ex-husband met with Moreno at the police department and admitted committing the assault. (Filing 20 ¶ 12.)  According to the complaint, "Plaintiff continued to have contact with Defendant Moreno regarding the abuse and threats of abuse by her ex-husband. Defendant Moreno became aware of the Plaintiff's vulnerable mental and emotional state as a result of their discussions about the domestic abuse the Plaintiff suffered." (Filing 20 ¶ 14.)

Beginning on October 22, 2010, Villanueva and Moreno entered into a "physical relationship," and four days later into a sexual relationship.  (Filing 20 ¶¶ 15-17.)  The amended complaint alleges that Moreno contacted Villanueva via e-mail to communicate sexual messages and to arrange sex, but Villanueva ended the relationship after Moreno "sent graphic, lewd, sexual references to the Plaintiff." (Filing 20 ¶¶ 18-21.)   After the relationship ended, Villanueva was harassed by telephone calls warning her to stay away from Moreno; by strangers who approached Villanueva questioning her about her relationship with Moreno; and by people who would pull into her driveway and wait.  While "[t]he Plaintiff would call the police, . . . no action was taken to investigate the people harassing the Plaintiff."  (Filing 20 ¶ 22-25.)

Villanueva's second amended complaint alleges that Moreno told others that Villanueva was "stalking, harassing, and attempting a physical relationship" with Moreno, and that Villanueva resigned from her position as "contact person" for her neighborhood-watch group after Moreno rejected her advances.  (Filing 20 ¶ 27.) Further, Villanueva alleges that between October 1999 and August 31, 2011, she made 219 calls to the police department to report suspicious activity on behalf of herself and in her role as the neighborhood-watch contact person.  Villanueva asserts that "[a]ll

calls that did not relate to the harassment of the Plaintiff were promptly investigated." (Filing 20 ¶ 29.)

Citing numerous specific examples, Villanueva's second amended complaint alleges that since August 2010, Villanueva made more than 12 reports to the police regarding domestic violence directed at her, harassing and threatening telephone calls, and suspicious activity outside her home, including vehicles whose occupants were "watching the house" and "tak[ing] pictures of the Plaintiff and her children." (Filing 20 ¶¶ 30-36.)   Telephone callers have threatened Villanueva that she "better be keeping [her] mouth shut, we know where you are." (Filing 20 ¶ 35.)   When Villanueva tried to report these instances to police, "No action was taken regarding the Plaintiff's reports about herself and her family.  The police had a policy of not even recording that she had made reports regarding harassment of herself." (Filing 20 ¶ 30.)  Because Moreno allegedly directed that his police department not make reports regarding the threats, harassment, and domestic violence reported by Villanueva, her attempt to get harassment protection orders against her ex-husband in June 2010 and against Moreno in May 2011 failed.  (Filing 20 ¶¶ 40-41.)

On January 3, 2012, Villanueva was threatened that if she "did not drop her lawsuit against Alex Moreno that she would not see her children grow up." (Filing 20 ¶ 37.)  On that date, the local police department told Villanueva to call the state patrol about the threats since it involved the chief of police.  Villanueva did so. However, when she called the state patrol on January 14, 2012, after someone tried to break into her home, Villanueva was then instructed to call the local police department for a uniformed officer.  When she did so, she was "placed on hold for six minutes, thirty-seven seconds and then was hung up on.  When she called back, she was informed that it was shift change and an officer would come when they were done with the shift change." (Filing 20 ¶ 39.)

Villanueva alleges that she continues to be "harassed and threatened regarding her affair with Defendant Moreno," including "threats on her safety in public places

4

as well as at home," and the "city police department takes no action regarding her reports of harassment." (Filing 20 ¶ 42.)

### C. Motion to Dismiss Plaintiff's Claims

Plaintiff brings her equal protection and substantive due process claims under 42 U.S.C. § 1983 and her claim for negligent infliction of emotional distress under state law. To state a claim under 42 U.S.C. § 1983, the plaintiff must allege a set of facts which, if proven true, demonstrate that the defendants violated a right secured by the Constitution and laws of the United States while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009).

### 1. *Equal Protection*

"[A]n equal protection claim arises upon a showing that it is the policy or custom of the police to provide less protection to victims of domestic violence than to other victims of violence, and that discrimination against women was a motivating factor behind this policy or custom." *Ricketts v. City of Columbia*, 36 F.3d 775, 780 (8th Cir. 1994) (internal quotations, citation & brackets omitted). *See also Freeman v. Ferguson*, 911 F.2d 52, 55 (8th Cir. 1990) ("the state may not 'selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause,'" [*DeShaney v. Winnebago County DSS*, 489 U.S. 189, 109 S. Ct. 998, 1004 n.3 (1989)]) (also citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 700-02 (9th Cir. 1990), which allowed plaintiff to amend equal protection claim to include specific claim that defendant's conduct reflected discrimination based on plaintiff's status as a female victim of domestic violence)).

The plaintiff asserting such a claim must produce evidence from which a reasonable jury could determine that the custom or policy "was motivated by an intent to discriminate against women." *Ricketts*, 36 F.3d at 781. "A discriminatory purpose

is more than a mere awareness of the consequences.  The law or custom must be found to have been implemented at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* (internal quotations & citations omitted).

Besides proving a constitutional violation, the plaintiff must also establish that "the constitutional violation was caused by a person acting under color of state law"—that is, "that the unconstitutional municipal custom caused the plaintiffs' injuries." *Ricketts*, 36 F.3d at 779.

Citing specific examples of the City of Scottsbluff's history of failing to acknowledge or act upon Villanueva's domestic-abuse and harassment complaints, but attending to all of her neighborhood-watch complaints, Villanueva's equal protection claim alleges that the defendants "implement[ed] a policy of treating domestic assaults differently than non-domestic assaults"; the "policy was motivated by an intent to discriminate against women"; and the policy "discriminate[s] against women (including the Plaintiff) because they are most often the victims of domestic violence." (Filing 20 ¶¶ 46, 47.)  While the latter allegations are simply "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, Villanueva has also made "well-pleaded factual allegations" which "plausibly give rise to an entitlement to relief." *Id*.  Accepting such factual allegations as true, I conclude that Villanueva has stated an equal protection claim that is plausible on its face, and the defendants' motion to dismiss this claim must be denied.

## 2.    *Substantive Due Process*

Substantive due process requires a state to protect (1) those in custody and (2) those for whom the state created the danger to which the individual was subjected, known as the "state-created-danger theory of liability."  *Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011) (§ 1983 action against county and its officials brought by county jail employee who was injured by inmates and who alleged violations of substantive due process rights).

"To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." *Id.* (internal quotations & citations omitted); *Schmidt*, 557 F.3d at 574 ("The standard for evaluating a substantive due process claim is whether the alleged 'behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" (quoting *Rogers v. City of Little Rock*, 152 F.3d 790, 797 (8th Cir. 1998))).

> The constitutional concept of conscience shocking duplicates no traditional category of common-law fault.  Actionable substantive due process claims involve a level of abuse of power so brutal and offensive that they do not comport with traditional ideas of fair play and decency.  Under the state-created-danger theory, negligence and gross negligence cannot support a § 1983 claim alleging a violation of substantive due process rights.  And proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold.

*Fields*, 652 F.3d at 891 (internal quotations, citations & brackets omitted).

To ultimately succeed on the state-created-danger theory, Villanueva must prove:

> (1) that she was a member of a limited, precisely definable group, (2) that the municipality's conduct put her at a significant risk of serious, immediate, and proximate harm, (3) that the risk was obvious or known to the municipality, (4) that the municipality acted recklessly in conscious disregard of the risk, and (5) that in total, the municipality's conduct shocks the conscience.

*Fields*, 652 F.3d at 891 (internal quotations omitted).

7

Villanueva alleges that she is a woman and victim of domestic violence and that defendant Moreno violated her rights to substantive due process by "engaging the Plaintiff in a sexual relationship following the Plaintiff's reports of Domestic Violence, refusing to address the Plaintiff's reports of Domestic Violence, and harassing and threatening the Plaintiff." (Filing 20 ¶ 62.) Citing numerous factual examples, Villanueva alleges that she "has received specific threats of harm if she does not dismiss her claims against Defendant"; that Moreno knew his actions created a risk of harm to Villanueva; and that Moreno acted with "reckless, conscious disregard of the risks of harm." (Filing 20 ¶¶ 59-61.)

Accepting Villanueva's factual allegations as true, I conclude that she has stated a claim to relief that is plausible on its face for a violation of her right to substantive due process. Villanueva has alleged that Moreno—and his staff, at Moreno's direction—systematically failed to investigate, act upon, or keep records of her complaints of domestic violence, resulting in the denial of her request for harassment protection orders against her ex-husband. Villanueva has alleged that both Moreno's affirmative actions and inaction have caused constant fear and anxiety as she and her family apparently continue to experience domestic abuse that Moreno and his department will not acknowledge or investigate, as well as threats on their life and safety due to the existence of this lawsuit.[2] "[A]n official's threat to employ deadly force for no legitimate reason rises to a substantive due process violation." *Hawkins v. Holloway*, 316 F.3d 777, 787 (8th Cir. 2003) ("the facts demonstrate that the sheriff deliberately abused his power by threatening deadly force as a means of oppressing those employed in his department, thus elevating his conduct to the arbitrary and conscience shocking behavior prohibited by substantive due process"); *see also Okin v. Village of Dornwall-On-Hudson Police Dep't*, 577 F.3d 415, 429-30 (2nd Cir. 2009) (state actors may be liable under § 1983 if they affirmatively create or enhance danger

---

[2] *See* Filing 20, Second Amended Complaint ¶ 37 ("On or about January 3, 2012, Plaintiff was specifically threatened that if the Plaintiff did not drop her lawsuit against Alex Moreno that she would not see her children grow up.").

of private violence; genuine issue of material fact existed as to whether police department and officers implicitly, but affirmatively, encouraged domestic violence by transmitting message that domestic violence would go unpunished).

Villanueva also suggests that Moreno physically invaded her bodily integrity by engaging her in a sexual relationship after Moreno "became aware of the Plaintiff's vulnerable mental and emotional state as a result of their discussions about the domestic abuse the Plaintiff suffered." (Filing 20 ¶ 14.) The "nonconsensual violation of intimate bodily integrity . . . is protected by substantive due process." *Rogers*, 152 F.3d at 796 (finding violation of substantive due process right in § 1983 action by woman who was raped by police officer following traffic stop and holding that officer's "egregious, nonconsensual entry into the body" was "an exercise of power without any legitimate governmental objective"). At this stage of the proceedings, it is not clear (1) whether the sexual contact between Villanueva and Moreno was consensual, (2) whether Villanueva felt compelled to cooperate with Moreno's alleged sexual demands because he was the chief of police who had the power to affect her exposure to domestic violence, or (3) whether the proven facts will establish that Moreno abused his power while carrying out the official duties entrusted to him by the state—all questions that will be considered in deciding if the alleged sexual contact was enough to support a constitutional violation of Villanueva's bodily integrity for purposes of her substantive due process claim or whether the sexual contact constituted misconduct for which no constitutional remedy is available. However, those questions are best sorted out on a motion for summary judgment.

Accordingly, to the extent the defendants' motion to dismiss applies to Villanueva's substantive due process claim[3], the motion will be denied.

---

[3]The defendants' motion to dismiss only mentions Villanueva's equal protection claim and her claim for negligent infliction of emotional distress. (Filing 21.) However, as stated above, I have concluded that Villanueva's second amended complaint states a substantive due process claim as well.

9

**3.      *Negligent Infliction of Emotional Distress***

Villanueva's claim under state law for negligent infliction of emotional distress is asserted against defendant Moreno in his individual capacity only.  (Filing 20 at CM/ECF p. 11.)  This theory of recovery "can be fairly described as mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." *Hamilton v. Nestor*, 659 N.W.2d 321, 324-25 (Neb. 2003) (negligent infliction of emotional distress is a separate theory of recovery or element of damage) (internal quotation & citation omitted).  A plaintiff whose "only injury is an emotional one must show that their emotional distress is medically diagnosable and significant and is so severe that no reasonable person could have expected to endure it." *Catron v. Lewis*, 712 N.W.2d 245, 249 (Neb. 2006).  "'It is only where [the emotional distress] is extreme that the liability arises.'" *Kant v. Altayar*, 704 N.W.2d 537, 540 (Neb. 2005) (quoting *Restatement (Second) of Torts* § 46, comment j. at 77 (1965)).

The defendants assert that this claim must be dismissed because Villanueva has not alleged compliance with the Nebraska Political Subdivision Tort Claims Act (the "Act"), Neb. Rev. Stat. §§ 13-901 to 13-928, which provides that "no suit shall be maintained against [a] political subdivision[4] or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the Political Subdivisions Tort Claims Act." Neb. Rev. Stat. § 13-902.  "While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Tort Claims Act." *Jessen v. Malhotra*, 665 N.W.2d 586, 590 (Neb. 2003).

---

[4]A "political subdivision" for purposes of the Act includes "cities of all classes." Neb. Rev. Stat. § 13-903(1).

The requirements of the Act apply "where an individual is sued in his or her individual capacity, but is performing within the scope of employment." *Cole v. Wilson*, 627 N.W.2d 140, 144 (Neb. Ct. App. 2001) (citing *Bohl v. Buffalo County*, 557 N.W.2d 668 (Neb. 1997); *Kuchar v. Krings*, 540 N.W.2d 582 (Neb. 1995)). *See* Neb. Rev. Stat. § 13-920 ("[n]o suit shall be commenced against any employee of a political subdivision for money on account of . . . personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting *in the scope of his or her office or employment* . . . unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued in accordance with section 13-905[5]" (emphasis added)).

From the face of Villanueva's second amended complaint, the scope within which defendant Moreno is alleged to have acted is unclear—that is, (1) *outside* the scope of his employment such that the Political Subdivisions Tort Claims Act would not apply and would therefore not serve as a basis upon which to dismiss Plaintiff's claims, *Stagemeyer v. County of Dawson*, 192 F. Supp. 2d 998, 1009 (D. Neb. 2002), or (2) *within* the scope of his employment such that the requirements of the Act must be met, including submission of a claim to the "governing body" in accordance with Neb. Rev. Stat. § 13-905 prior to filing suit.  What is clear, however, is that Villanueva has not alleged compliance with the Nebraska Political Subdivision Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to 13-928.

Therefore, to the extent Villanueva asserts her claim for negligent infliction of emotional distress against Moreno individually for acts taken *within* the scope of his

---

[5] Neb. Rev. Stat. § 13-905 provides, "All tort claims under the Political Subdivisions Tort Claims Act . . . shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision, or the governing body of a political subdivision may provide that such claims may be filed with the duly constituted law department of such subdivision."

11

employment, such claim shall be dismissed. *See Hall v. County of Nemaha*, No. 4:06CV3069, 2006 WL 1795279, at *5 (D. Neb. June 28, 2006) (Nebraska Tort Claims Act applies when individual is sued in individual capacity, but acted within the scope of employment; dismissing plaintiffs' individual-capacity claims based upon negligence and intentional infliction of emotional distress pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiffs failed to allege that defendants acted outside scope of employment or that claim was submitted to governing body specified in Nebraska Political Subdivisions Tort Claims Act).

Conversely, to the extent Villanueva asserts her claim for negligent infliction of emotional distress against Moreno individually for acts taken *outside* the scope of his employment, such claim shall not be dismissed at this time. *See Stagemeyer*, 192 F. Supp. 2d at 1009-10 (denying motion to dismiss malicious prosecution claim under state law and stating, "The issue of whether Defendants acted within the scope of their employment, and are therefore immune from suit under the State Tort Claims Act, and whether Defendants are entitled to qualified immunity cannot be determined from the face of the complaint.  Plaintiffs have clearly indicated they are suing Defendants in their individual capacities, and Plaintiffs have stated a valid claim for malicious prosecution under Nebraska law.  Under these circumstances, it is incumbent upon Defendants to plead and prove immunity as an affirmative defense.").

### D.  Motion to Strike/Dismiss Claim for Punitive Damages

Villanueva requests punitive damages against all defendants, apparently in connection with both her federal and state claims.  (Filing 20 ¶¶ 64-68.)  The defendants move to strike Villanueva's claim for punitive damages against the City of Scottsbluff and Alex Moreno in his official capacity for acts alleged to be in violation of 42 U.S.C. § 1983 and Villanueva's claim for punitive damages against all

defendants for acts alleged to constitute negligent infliction of emotional distress under Nebraska law.[6]  (Filing 23.)

Villanueva concedes that punitive damages are not recoverable on her section 1983 claim against the City of Scottsbluff and Alex Moreno in his official capacity. Plaintiff also concedes that punitive damages are not recoverable in connection with her state-law claim for negligent infliction of emotional distress.   (Filing 25 at CM/ECF p. 1.)  Therefore, the defendants' motion (filing 23) shall be granted.

IT IS ORDERED:

1.     The defendants' motion to dismiss (filing 21) the plaintiff's equal protection claim pursuant to Fed. R. Civ. P. 12(b)(6) is denied;

2.     To the extent the defendants' motion to dismiss (filing 21) pursuant to Fed. R. Civ. P. 12(b)(6) is asserted against Villanueva's substantive due process claim, the motion is denied;

3.     To the extent Villanueva asserts a claim for negligent infliction of emotional distress under state law against defendant Alex Moreno individually for acts taken *within* the scope of his employment, Defendants' motion to dismiss (filing 21) pursuant to Fed. R. Civ. P. 12(b)(6) is granted.  To the extent Villanueva asserts a claim for negligent infliction of emotional distress under state law against defendant Alex Moreno individually for acts taken *outside* the scope of his employment, Defendants' motion to dismiss (filing 21) pursuant to Fed. R. Civ. P. 12(b)(6) is denied;

---

[6]The defendants' motion to strike does not encompass Villanueva's claim for punitive damages against Alex Moreno in his individual capacity under 42 U.S.C. § 1983.

13

4.      Defendants' motion to strike (filing 23) is granted.   Accordingly, Plaintiff's claim for punitive damages under 42 U.S.C. § 1983 against the City of Scottsbluff and defendant Alex Moreno in his official capacity is stricken, and Plaintiff's claim for punitive damages against all defendants for acts alleged to constitute negligent infliction of emotional distress under Nebraska law is stricken.

DATED this 25th day of June, 2012.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.